IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOHN FRANCIS TOBIN,

            Plaintiff,                       OPINION AND ORDER

v.

                                           16-cv-638-bbc

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

            Defendant.

---

      Plaintiff John Francis Tobin is seeking review of a final decision by defendant Nancy A. Berryhill, Acting Commissioner of Social Security, denying his claim for disability insurance benefits and supplemental security income under the Social Security Act. 42 U.S.C. § 405(g). Dkt. #8. Plaintiff seeks remand of that decision, arguing that the administrative law judge who decided the case erred in failing to develop the record with respect to plaintiff's atrial fibrillation and did not rely on a physician's opinion when assessing plaintiff's residual functional capacity with respect to that condition. Dkt. #9.

      For the reasons explained below, I am remanding this case so the administrative law judge can consider whether the present record is sufficient to allow him to draw a conclusion about the effect of plaintiff's atrial fibrillation on his ability to work and to explain his findings with respect to plaintiff's residual functional capacity.

      The following facts are drawn from the administrative record (AR).

BACKGROUND FACTS

A. <u>Relevant Medical History</u>

Plaintiff John Tobin was admitted to the hospital on July 9, 2013, after he had had shortness of breath and a high heart rate for five days. Dr. Rick Klein, plaintiff's primary physician, noted that plaintiff had acute renal failure, atrial fibrillation with rapid ventricular response, cardiogenic shock, respiratory shock, respiratory failure, severe tricuspid regurgitation and fatty liver disease. Plaintiff had to be resuscitated three times on July 9, and he remained on a ventilator until July 15, 2013. Plaintiff's conditions improved with medication, dialysis, oxygen treatment and other measures, but he continued to experience weakness and trouble walking and climbing stairs. Dr. Klein noted that many of plaintiff's conditions were secondary to severe alcohol abuse and that plaintiff had reported drinking 24 beers a day for 15 years. AR 325-28. Plaintiff was released from the hospital on July 24, 2013.

On August 8, 2013, nurse practitioner Jenny Prinsen evaluated plaintiff for the heart failure clinic. She noted that he had alcoholic cardiomyopathy that was rated class II and "ACC stage C" on the New York Heart Association scale and that he had normal sinus rhythm. AR 514-15. On October 28, 2013, cardiologist Dr. Monique Freund noted inconsistent reports regarding plaintiff's continued use of alcohol and whether he was wearing a life vest. (This is not identified in the record, but it appears to be a wearable defibrillator.) AR 564. Freund reviewed plaintiff's recent transthoracic echocardiogram, which revealed that his left ventricle ejection fraction had "significantly increased" from 10

2

to 45 percent and that he had mild right ventricle enlargement and dysfunction. AR 565 and 575. On March 14, 2014, Dr. Klein wrote a letter stating that plaintiff was unable to care for his five-year old child before or after school because of his health. AR 620.

On March 28, 2014, Prinsen reported that when she saw plaintiff in February 2014, he had weakness and dizziness and reported falling four or five times. AR 621. Plaintiff experienced an episode of paroxysmal atrial fibrillation on February 27, 2014. Dr. Klein and Dr. Freund reduced his digoxin dosage, which improved his symptoms somewhat. Id. Prinsen questioned whether plaintiff would have the energy and strength to return to work at that time. Id. On September 22, 2014, Prinsen noted that plaintiff's heartbeat was irregular, and an electrocardiogram confirmed atrial fibrillation. AR 640. An October 6, 2014 echocardiogran revealed that plaintiff's left ventricle ejection fraction was mildly reduced at 42%. Id. On October 20, 2014, plaintiff told Prinsen that his fatigue and dizziness seemed worse after the atrial fibrillation and that he would like to try to convert it again. Id. Prinsen planned a hospitalization on October 27, 2014 for sotalol initiation and a cardioversion for October 28 or 29. AR 641. She noted that scheduling the procedure required working around plaintiff's work schedule. Id.

Although plaintiff did successfully convert into sinus bradycardia in October, Prinsen noted that he went back into atrial fibrillation in November 2014. AR 628-32. After examining plaintiff on November 20, 2014, Dr. Freddy Del-Carpio Munoz recommended atrial fibrillation catheter ablation and started plaintiff on Amiodarone. On December 22, 2014, plaintiff told Prinsen that he did not have chest discomfort or shortness of breath and

was walking a mile and a half every day but that he felt dizzy after taking his morning medications and felt palpitations that he thought were atrial fibrillation. AR 628.

Plaintiff underwent catheter ablation for atrial fibrillation on January 7, 2015 and then developed recurrent atypical atrial flutter and fibrillation. Dr. Del-Carpio Munoz noted that plaintiff developed symptoms similar to those he had had during his atrial fibrillation. Cardioversion was not performed because plaintiff self-converted. AR 624-27.

B. Administrative Proceedings

Plaintiff applied for benefits on August 7, 2013, alleging that he became disabled when he was hospitalized on July 9, 2013. AR 20 and 23. His claims were denied initially on November 20, 2013, and upon reconsideration on March 24, 2014, and he filed a written request for hearing on April 3, 2014. AR 20. His last insured date under the Social Security Act was December 31, 2014. AR 21.

Administrative Law Judge Thomas Springer held an administrative hearing on April 22, 2015, at which plaintiff testified that his medications made him feel tired, out of breath, nauseated and dizzy for three or four hours after he took his pills in the morning. AR 65-66, 76-77. He testified that these symptoms prevented him from working more than four hours a day handing out samples at Walmart. Id. When he goes into atrial fibrillation, which occurs daily, he has to sit or lie down right away. AR 77-78.

In a written decision dated May 13, 2015, the administrative law judge found that although plaintiff was severely impaired by "status post cardiopulmonary resuscitation x 3

with a history of nonischemic cardiomyopathy and atrial fibrillation," he retained the residual functional capacity to perform his past sedentary work as an order and collection clerk through his last insured date. AR 23 and 32. The administrative law judge noted that the evidence demonstrated that plaintiff's condition had improved, even with some episodes of atrial fibrillation. AR 30. State medical consultants limited plaintiff to light work. The administrative law judge acknowledged that these assessments were made prior to plaintiff's treatment for recurrent atrial fibrillation in late 2014, but noted that he had reduced plaintiff's residual functional capacity assessment to sedentary work "in an effort to accord the claimant's allegations of fatigue significant weight." AR 32. In support of this finding, the administrative law judge wrote that "[a]lthough the evidence demonstrates that the claimant has been walking a mile in 15 minutes and able to jog for 5 continuous minutes [AR 617], the undersigned considered the claimant's ability to sustain such activity given his fatigue and finds that a determination limiting him to sedentary exertion is more consistent with such endurance issues." Id.

OPINION

Plaintiff asserts that the administrative law judge inappropriately "played doctor" by concluding that plaintiff would be able to work a full-time sedentary job even though he suffers from recurrent atrial fibrillation. Rohan v. Chater, 98 F.3d 966, 970-71 (7th Cir. 1996) (administrative law judge may not "play doctor" by substituting his own opinion for that of physician or making judgments not substantiated by objective medical evidence).

No physician has provided an opinion of the effect of plaintiff's atrial fibrillation on his ability to work. After plaintiff recovered from his July 2013 heart failure but before he was given the diagnosis of recurrent atrial fibrillation in November 2014, two state agency doctors concluded that he was capable of light level work. Dr. Syd Foster wrote on November 20, 2013 that "[i]t is felt that he will be able to perform Light exertion w/no heights or hazards within one year" of his alleged onset date. AR 110. Dr. George Walcott affirmed this finding on March 20, 2014, noting that even though plaintiff was fatigued, his stamina had improved, he was asymptomatic and his cardiomyopathy should continue to improve with alcohol abstinence. AR 113, 118-19.

The administrative law judge acknowledged that neither state agency doctor had the benefit of plaintiff's more recent medical records from 2014, which showed a return of his fatigue and other symptoms and a diagnosis of recurrent atrial fibrillation. Plaintiff testified that his functioning was significantly limited by his fatigue, dizziness and nausea, and the medical records generally confirm this. Although the administrative law judge found that plaintiff attempted "to portray his actual functioning as far less . . . than it actually is," AR 30, he gave plaintiff's report of continuing fatigue significant weight and attempted to account for it by limiting plaintiff to sedentary work. AR 32. However, as plaintiff argues, the administrative law judge did not explain why he believed that plaintiff could sustain full-time work at a sedentary level and he failed to cite any medical evidence that supported his decision. Instead, he noted only that he had considered plaintiff's reported ability to walk a mile in 15 minutes and jog for five minutes even with fatigue and determined that

"sedentary exertion" was "more consistent with such endurance issues." Id.  It is not clear how or why plaintiff's ability to walk or jog for limited periods makes him capable of full-time sedentary work, especially in light of the fact that plaintiff reported doing these activities in September 2014, AR 617, *before* his diagnosis and treatment for recurrent atrial fibrillation.

Although defendant is correct that plaintiff "must furnish medical and other evidence that the administrative law judge can use to reach conclusions about his medical impairment and its effect on his ability to work on a sustained basis," defendant has the burden of proving plaintiff's "capability to perform sedentary work." Luna v. Shalala, 22 F.3d 687, 693 (7th Cir. 1994) (citing 20 CFR 404.1512(a)).  The administrative law judge may not have been required to call a medical expert in this case, as plaintiff suggests, 20 C.F.R. § 404.1527(f)(2)(iii) (administrative law judges have discretion to ask for and consider opinions from medical experts), but he did have the duty to "fully develop the record before drawing any conclusions and . . . adequately articulate [his] analysis" so the court can follow his reasoning.  Minnick v. Colvin, 775 F.3d 929, 938 (7th Cir. 2015).  Apart from assumptions that the administrative law judge made about a few limited activities that plaintiff performed during a potentially irrelevant period of time, I am unable to determine how he made his assessment of plaintiff's residual functional capacity.  Accordingly, defendant's decision must be reversed and remanded for further proceedings consistent with this opinion.

ORDER

IT IS ORDERED that plaintiff John Frances Tobin's appeal, dkt. #10, is GRANTED and this case is REMANDED to defendant Nancy A. Berryhill, Acting Commissioner of Social Security, pursuant to 42 U.S.C. § 405(g). Judgment is to be entered in favor of plaintiff.

Entered this 17th day of July, 2017.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge